OPINION
On November 8, 2000, a hearing was held before the Ohio Liquor Control Commission ("commission") in order to determine whether the liquor permit(s) held by Goldfinger Enterprises, Inc. ("Goldfinger") should be suspended or revoked or forfeiture o rdered for the following alleged violations:
 [1.] On February 26, 1999, your agent and/or employee, GREGORY "SCOTTY" PERKINS and/or your unidentified agent and/or employee, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct in that your agent and/or employee, GREGORY "SCOTTY" PERKINS and/or your unidentified agent and/or employee, did traffic in cocaine in violation of 4301:1-1-52 a regulation of the Ohio Administrative Code.
 [2.] On March 26, 1999, your agent and/or employee, GREGORY "SCOTTY" PERKINS and/or your unidentified agent and/or employee, did knowingly and/or willfully allow in and upon or about the permit premises, improper conduct in that your agent and/or employee, GREGORY "SCOTTY" PERKINS and/or your unidentified agent and/or employee, did traffic in cocaine in violation of 4301:1-1-52 a regulation of the Ohio Administrative Code.
By way of brief background, Daniel Dell was the sole shareholder of Goldfinger, which held a liquor permit or permits for the premises known as The Cell Block Nightclub on Jail Alley ("Cell Block") in Cincinnati, Ohio. Prior to the first date in question, a Cincinnati police officer had met Gregory "Scotty" Perkins at another location. Mr. Perkins told the officer, who was working undercover, that he worked at the Cell Block and could sell the officer cocaine. On February 26, 1999, the officer went to the Cell Block. Mr. Perkins was working that night as a bartender. The officer asked Mr. Perkins if he "had any." Mr. Perkins asked the officer for $100, left the bar area and returned with a packet of cocaine, which he gave to the officer. Apparently, Mr. Perkins got the cocaine from an acquaintance. Mr. Perkins testified that he gave all the money to the acquaintance, that he had made no money from the deal and that he was just a "pass-through."
On March 26, 1999, the officer again made a $100 purchase of cocaine at the permit premises, through Mr. Perkins, in much the same way as in the February 26, 1999 incident. Mr. Dell was not at the permit premises during either of these occasions.
After the hearing, on December 5, 2000, the commission mailed its orders as to each alleged violation. As to both allegations, the commission found violations of Ohio Adm. Code 4301:1-1-52 and revoked Goldfinger's permit(s). Goldfinger appealed to the Franklin County Court of Common Pleas, and a stay of the revocation(s) was granted.
The parties filed briefs. On September 19, 2001, the common pleas court rendered a decision finding the commission's order was supported by reliable, probative and substantial evidence and was in accordance with law.
Goldfinger (hereinafter "appellant") has appealed to this court, a ssigning the following error for our consideration:
 THE COURT OF COMMON PLEAS ERRED WHEN IT FOUND THAT THE ORDER OF THE LIQUOR CONTROL COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW.
In reviewing the commission's order in an R.C. 119.12 appeal, a court of common pleas is required to affirm if the order is supported by reliable, probative and substantial evidence and is in accordance with law. VFW Post 8586 v. Ohio Liquor Control Comm. (1998), 83 Ohio St.3d 79,81. The determination of whether an agency order is supported by reliable, probative and substantial evidence involves essentially a question of the absence or presence of the requisite quantum of evidence. Univ. of Cincinnati v. Conrad (1980), 63 Ohio St.2d 108, 111.
While it is incumbent on the common pleas court to examine the evidence, this is not the function of the court of appeals. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. This court determines only if the common pleas court abused its discretion, which encompasses not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Id. Absent such an abuse of discretion, this court may not substitute its judgment for that of the agency or common pleas court. Id. As to questions of law, this court's review is de novo. See Ohio Historical Soc. v. State Emp. Relations Bd. (1993), 66 Ohio St.3d 466, 471.
Appellant asserts the commission erred in finding a violation of Ohio Adm. Code 4301:1-1-52 ("Regulation 52") because the evidence showed that appellant had no knowledge of any illegal or improper activity occurring on the premises. As to both incidents in question, appellant was charged with alleged violations of Regulation 52, which states, in pertinent part:
 (B) Prohibited activities: no permit holder, his agent, or employee shall knowingly or willfully allow in and upon his licensed permit premises any persons to:
* * *
 (4) Allow in, upon or about the licensed permit premises, or engage in or facilitate in, the possession, use, manufacture, transfer, or sale of any dangerous drug, controlled substance, narcotic, harmful intoxicant, counterfeit controlled substance, drug, drug paraphernalia, or drug abuse instrument as said terms are defined in ORC Chapter 2925. [Emphasis added.]
Regulation 52 was amended, effective December 10, 1998. We note that this court has found certain subsections of the recently-amended Regulation 52 unconstitutional. See 161 Dublin, Inc. v. Liquor Control Comm., Franklin App. No. 01AP-134, 2001-Ohio-8863. However, Regulation 52(B)(4), at issue in the present case, was not at issue in that case.
The language above clearly prohibits, among other things, an employee from knowingly allowing any person to possess or sell any controlled substance or drug on the permit premises. Indeed, the language clearly states that "no permit holder, his agent or employee" shall knowingly allow the prohibited activities. Hence, in order to find a violation, it is unnecessary that the permit holder himself or herself participate in or be aware of the prohibited activity. Rather, the clear language of Regulation 52 permits a finding of a violation where only an employee or agent of the permit holder knowingly allows certain activities on the permit premises. Simply put, Regulation 52 does not require knowledge on the part of the permit holder.
The evidence in the case at bar shows that on the two dates in question, appellant's employee, Mr. Perkins, knowingly allowed an acquaintance of his to engage in the sale of cocaine on the permit premises. Further, the evidence shows that Mr. Perkins knowingly and willfully engaged in and facilitated the sale of cocaine on the permit premises. As indicated above, the fact that appellant was unaware of the sales or of any related prohibited activity does not preclude a finding of a violation of Regulation 52(B)(4). We note that in this regard, the hearing notices, which alleged that appellant's employee (and not appellant itself) knowingly allowed improper conduct/trafficking in cocaine in violation of Regulation 52, were proper.
Given all of the above, we cannot find that the common pleas court abused its discretion or otherwise erred as a matter of law in determining that the commission's order was supported by reliable, probative and substantial evidence and was in accordance with law. Lastly, under the oft-cited case of Henry's Café, Inc. v. Bd. of Liquor Control (1959), 170 Ohio St. 233, this court has no authority to modify a penalty lawfully imposed by the commission. See, also, Jones v. Ohio Liquor Control Comm., Franklin App. No. 01AP-344, 2001-Ohio-8766; and Lindner v. Ohio Liquor Control Comm. (2001), Franklin App. No. 00AP-1430.
However, we do acknowledge the harsh effects Henry's Café and its progeny have had, particularly in cases involving the commission. For example, in the case at bar, the evidence showed that Mr. Perkins had an acquaintance who sold cocaine. At a location different from the permit premises, an undercover officer made contact with Mr. Perkins. Mr. Perkins mentioned that he worked at the Cell Block and that he could get some cocaine. Sometime later, the officer went to the Cell Block for the purpose of making the deal(s). Mr. Perkins was merely a "go-between" through which the undercover officer obtained cocaine on the two dates in question. There was no evidence that Mr. Perkins was a dealer and/or that he had made similar deals on the permit premises in the past. Further, there was no evidence that the Cell Block was a location in which drug activity occurred in general.
Finally, there was no evidence that the permit holder had any knowledge of any improper conduct on the permit premises. Mr. Dell fired Mr. Perkins after he learned of Mr. Perkins' arrest. We note further that this was not a situation where the permit holder was an "absentee" owner. Rather, Mr. Dell was regularly on the permit premises. Yet, the commission decided to revoke appellant's permit(s), which would certainly amount to a "death sentence" for Mr. Dell's business. While this court certainly understands and agrees with the general policy and purposes behind Regulation 52(B)(4), we also recognize that in certain cases, the penalty imposed by the commission can be inequitable and unwarranted under the particular facts.
Despite the facts in the case at bar, we unfortunately are bound by the precedent of Henry's Café. As this court stated in Lindner:
 The case involving [appellants] emphasizes how harsh the effects of Henry's Café can be. As a practical matter, courts have no power to review penalties meted out by the commission. Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh. * * * Perhaps the time to reconsider Henry's Café has arrived, but the Supreme Court of Ohio must be the court to do that reconsideration. We, as an intermediate appellate court, are required to follow the syllabus of Henry's Café unless or until such reconsideration occurs.
See, also, In Out Market, Inc. v. Ohio State Liquor Control Comm. (2001), 10th Dist. No. 01AP-231.
Under R.C. 4301.25(A), the commission could lawfully revoke appellant's permit for a violation of Regulation 52(B)(4). Hence, this court has no authority to modify the penalty imposed here. Accordingly, appellant's sole assignment of error is overruled.
Having overruled appellant's assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, J., concurs.
DESHLER, J., concurs separately.